IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | |
|---|---|
| LAMARK LOUIS BUSSEY, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> BRIDGER TRANSPORTATION, LLC, <br><br> Defendant. | Civil Action No. 2:19-cv-310 |

**DEFENDANT BRIDGER TRANSPORTATION, LLC'S
MOTION FOR JUDGMENT ON THE PLEADINGS**

**TABLE OF CONTENTS**

I. INTRODUCTION ...................................................................................................... 1

II. STANDARD ............................................................................................................... 1

III. ARGUMENT AND AUTHORITIES ......................................................................... 2

    A. The FMCSA's jurisdiction over Plaintiffs precludes FLSA coverage ........................................................................................................ 3

        1. History of the Motor Carrier Act Exemption enactment ............. 3

        2. The Motor Carrier Act Exemption sweeps broadly ...................... 4

    B. The Motor Carrier Act Exemption applies based on Plaintiffs' pleadings alone, and accordingly his FLSA overtime claim must be dismissed. ............................................................................................... 5

        1. Bridger Transportation is a motor carrier subject to FMCSA jurisdiction. .................................................................... 5

        2. Plaintiffs were commercial motor vehicle drivers. ....................... 6

        3. Plaintiffs transported product moving in interstate commerce. ...................................................................................... 7

IV. CONCLUSION ........................................................................................................... 9

i

Defendant, Bridger Transportation, LLC (Bridger), files this Motion for Judgment on the Pleadings and supporting brief pursuant to Fed. R. Civ. P. 12(c), and requests oral argument pursuant to Local Rule 7.5.A.

## I.   INTRODUCTION

A truck driver under the jurisdiction of the Federal Motor Carrier Safety Administration (FMCSA) falls within the Motor Carrier Act Exemption to the Fair Labor Standards Act (FLSA) and is not entitled to overtime compensation. 29 U.S.C. § 213(b)(1). The FMCSA's jurisdiction extends to commercial motor vehicle drivers who transport product moving in interstate commerce for a motor carrier. *Secretary of Transportation Notice of Interpretation*, 46 Fed. Reg. 37902, 1981 WL 115508 (July 23, 1981). Plaintiffs' pleadings cement that these conditions are satisfied here and the Motor Carrier Act Exemption in turn precludes Plaintiffs' request for overtime.

## II.   STANDARD

"After the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings." FED. R. CIV. P. 12(c). The same judicial standard applies to both a motion for judgment on the pleadings under Rule 12(c) and a motion to dismiss for failure to state a claim under Rule 12(b)(6). *Chauvin v. State Farm Fire & Cas. Co.*, 495 F.3d 232, 237 (5th Cir. 2007). Pleaded allegations must be accepted as true and construed in the light most favorable to Plaintiff. *Id*. The motion "should not be granted unless the plaintiff would not be entitled to relief under any set of facts that he could prove consistent with the complaint." *Id*.

The inquiry under Rule 12(c) "focuses on the allegations in the pleadings and not on whether the plaintiff actually has sufficient evidence to succeed on the merits." *Ackerson v. Bean Dredging LLC*, 589 F.3d 196, 209 (5th Cir. 2009) (internal quotations and citation omitted). "Where a successful affirmative defense appears on the face of the pleadings" dismissal under Rule 12(c) is appropriate. *U.S. ex. rel. Long v. GSDMIdea City, L.L.C.,* 798 F.3d 265, 274 (5th Cir. 2015).

### III.  ARGUMENT AND AUTHORITIES

As noted previously in Bridger Transportation's *Reply Brief in Support of Motion to Dismiss Plaintiff's Second Amended Complaint* (ECF No. 38), the Motor Carrier Act Exemption is a legal issue that turns purely on a question of governmental jurisdiction. ECF No. 38 at 3 (citing *Levinson v. Spector Motor Serv.*, 330 U.S. 649, 659-62 (1947); *Songer v. Dillon Resources, Inc.,* 618 F.3d 467, 473 (5th Cir. 2010), *abrogated on other grounds*, 741 Fed. Appx. 203 (5th Cir. 2018)). Neither party disputes the salient facts giving the FMCSA jurisdiction over Plaintiffs here: (1) Bridger Transportation is a motor carrier (*see infra* at 6, n.4), (2) Plaintiffs were commercial motor vehicle drivers (*see infra* at 6-7), and (3) Plaintiffs were subject to transport product in interstate commerce while driving under Bridger Transportation's FMCSA motor-carrier authority (*see infra* at 7-8).

With the FMCSA's jurisdiction established through facts admitted in the pleadings and/or that the Court can take judicial notice of, Bridger Transportation is entitled to judgment in its favor on the lone FLSA overtime claim Plaintiffs assert. The Court previously declined consideration of the Motor Carrier Act Exemption in conjunction with the Motion to Dismiss briefing but invited Bridger Transportation

to "file a separate Rule 12(c) motion on this issue or raise it later as a summary judgment ground." ECF No. 39 at 7. Under an obligation imposed by Rule 1's dictate to "secure the just, speedy, and inexpensive determination of every action and proceeding," Bridger Transportation requests judgment under Rule 12(c) in an effort to reduce the time and expense of requesting this relief in a summary judgment motion at the close of discovery.

### A. The FMCSA's jurisdiction over Plaintiffs precludes FLSA coverage

#### 1. History of the Motor Carrier Act Exemption enactment

In response to state efforts to regulate motor carrier safety, Congress passed the Motor Carrier Act in 1935 authorizing the Interstate Commerce Commission (ICC), now the FMCSA, to establish qualifications and maximum hours of service for a motor carrier's employees whose work affects safety. *Levinson,* 330 U.S. at 657; 49 Stat. 543 (1935); *see also* 49 U.S.C. § 31502(b)(1).[1] Drivers are among the class of employees whose work is deemed to affect safety and who are accordingly subject to the FMCSA's jurisdiction. *Songer,* 618 F.3d at 473; *Levinson*, 330 U.S. at 663; *Morris v. McComb*, 332 U.S. 422, 431-32 (1947).

Intent on maintaining continuity in the safety programs that Congress and the FMCSA developed, the Motor Carrier Act prohibits the overlap of the United States

---

[1] While the Motor Carrier Act Exemption refers to the Secretary of Transportation's jurisdiction, because the Secretary of Transportation delegated to the FMCSA its responsibility for establishing truck driver qualifications and hours-of-service the FMCSA's jurisdiction is referenced here. *See Darrell Andrews Trucking, Inc. v. FMCSA,* 296 F.3d 1120, 1123 n.1 (D.C. Cir. 2002) (noting "[m]otor carriers were initially regulated by the Interstate Commerce Commission [pursuant to] Motor Carrier Act, Pub. To No. 74-255, 49 Stat. 543 (1935)" and that authority was transferred to the Department of Transportation in 1966, which delegated responsibility for enforcing the Regulations to the FMCSA in 1999).

3

Department of Labor and the FMCSA's jurisdiction. *Levinson*, 330 U.S. at 661-62. Consistent with the Congressional mandate that Department of Labor jurisdiction does not overlap with the FMCSA's, Congress created the Motor Carrier Act Exemption when it passed the FLSA in 1938. Under this exemption, the FLSA's overtime pay requirements do not apply to any "employee with whom the [FMCSA] has power to establish qualifications and maximum hours of service. . . ." 29 U.S.C. § 213(b)(1); *see also Levinson*, 330 U.S. at 677 (identifying the goal of the Motor Carrier Act Exemption as putting "safety first" by giving full recognition to the safety program of the FMCSA).

### 2. The Motor Carrier Act Exemption sweeps broadly

The FMCSA's power to regulate hours of service and qualifications extends to drivers who (1) operate a commercial motor vehicle for a motor carrier in interstate commerce, or (2) who the motor carrier has a reasonable expectation will do so. *See* 49 C.F.R. § 1.86 (giving the Secretary of Transportation responsibility for "administering laws and promulgating and enforcing regulations on safety matters relating to motor carrier safety"); 49 C.F.R. Pt. 390 (rules on driver hours of service); *Application of the Federal Motor Carrier Safety Regulations,* 46 Fed. Reg. 37902-02 (July 23, 1981) ("evidence of driving in interstate commerce or being subject to being used in interstate commerce should be accepted as proof that the driver is subject" to the Secretary of Transportation's jurisdiction). "The scope of an interstate commerce run under the [Motor Carrier Act] is generous" and "includes a purely intrastate run

4

so long as it is a part of a continuous interstate journey." *Burlaka v. Cont. Transp. Servs. LLC*, 971 F.3d 718, 720 (7th Cir. 2020).[2]

Whether the motor carrier has a reasonable expectation of a driver transporting product in interstate commerce also sweeps broadly. 46 Fed. Reg. 37902-02, 1981 WL 115508 (July 23, 1981) (recognizing the FMCSA's jurisdiction extends to any driver who "because of company policy and activity . . . could reasonably be expected to do interstate driving."). Giving the FMCSA jurisdiction over drivers who rarely—or never—engage in interstate commerce furthers the highway-safety purpose of the Motor Carrier Act Exemption. *Songer*, 618 F.3d at 474 (describing FMCSA's broad jurisdiction over a driver operating a commercial motor vehicle in interstate commerce because "the safety concerns facing a carrier who sent every driver on an interstate trip would be the same if the carrier sent only some or most of its driver on interstate trips.").

**B. The Motor Carrier Act Exemption applies based on Plaintiffs' pleadings alone, and accordingly his FLSA overtime claim must be dismissed.**

With the inherent safety concerns attendant to any driver operating a commercial motor vehicle in mind, now is the appropriate time for determining the FMCSA's jurisdiction over the Plaintiffs based on the following:

**1. Bridger Transportation is a motor carrier subject to FMCSA jurisdiction.**

Bridger Transportation provided interstate motor transportation of crude oil,

---

[2] *See also* 49 U.S.C. § 13501 (identifying the FMCSA's jurisdiction, through the Secretary of Transportation, as extending to transportation "between a place in – (A) a State and a place in another State; or (B) a State and another place in the same State through another State.").

5

refinery byproducts, condensates, and natural gasoline under authority issued by the Federal Motor Carrier Safety Administration. ECF No. 15 at 2; *Third Amended Complaint* (TAC) ¶ 6 (ECF No. 43-2).[3] The Court can take judicial notice of Bridger Transportation's FMCSA motor-carrier authority.[4]

### 2.   Plaintiffs were commercial motor vehicle drivers.

Plaintiffs' work as a driver is also unquestioned given the numerous allegations referencing their roles as commercial motor vehicle drivers. TAC ¶¶ 11 ("Defendant controlled the manner and ability by which Plaintiffs could deliver his oil or production water shipments . . . Defendant dispatched drivers to the various delivery locations in Texas, requiring drivers to work on Bridger's schedule"), 12 ("Defendant provided the trucks and barrel crude trailers required to perform Plaintiffs' job duties), 14 ("there can be no doubt that a certain amount of skill is required to engage in the trucking industry as a driver"); *see also* ECF No. 26 at 7 ("Plaintiff's primary job duties consisted of driving to and from locations to transport oil or production water for Defendant."); ECF No. 32 at 6 (defining now dismissed

---

[3] On May 14, 2021, Plaintiffs filed an Unopposed Motion for Leave to File Amended Complaint (ECF No. 43), attaching the proposed TAC (ECF No. 43-2). This motion assumes that the proposed TAC will be the operative complaint. Should the Court deny Plaintiffs leave to file the TAC, the arguments here would remain unchanged, since Plaintiffs' factual allegations pertinent to this motion also are pleaded in the Second Amended Complaint (SAC) (ECF No. 32).

[4] Bridger Transportation's prior registration with the FMCSA as a "Motor Property Contract Carrier," operating under No. MC-373136 (USDOT No. 844144), is detailed in the report attached as *Exhibit 1*, available on the FMCSA's motor-carrier database, at https://safer.fmcsa.dot.gov/ (select "Licensing and Insurance," then type in "Bridger Transportation" and select Louisiana under the "State" tab). *See Dalfrey v. Boss Hoss Cycles, Inc.*, 456 Fed. Appx. 329, 333 n.3 (5th Cir. 2011) (unpublished) (quoting *Norris v. Hearst Trust*, 500 F.3d 454, 461 n. 9 (5th Cir. 2007)) ("in considering a motion to dismiss, the district court may 'take judicial notice of matters of public record.'"); *Cruz Miguel Aguina Morales v. Redco Transp. Ltd.*, 2015 WL 9274068, at *1 (S.D. Tex. Dec. 21, 2015) (recognizing permissibility of judicial notice of FMCSA broker classification).  As indicated in *Exhibit 1*, Bridger Transportation's motor carrier authority was revoked in December 2018 after the company's acquisition by PWT LLC on July 27, 2018. Plaintiffs' claim they were employed by Bridger Transportation prior to December 2018. *See* SAC ¶ 13 (ECF No. 25) (claiming Bridger Transportation employed Plaintiff Bussey from "approximately September 2017 to April 2018.").

collective action to include "similarly-situated Potential Plaintiffs" as "'water hauler', 'truck drivers', 'drivers', or other titles which performed the same or similar job function of transportation oil and/or production water").

Plaintiffs' further admission that they drove "trucks and barrel crude trailers" (TAC ¶ 12) containing "barrels of production water and oil" (TAC ¶ 10) brings them within FMCSA jurisdiction as drivers of commercial motor vehicles that operated on public highways. 49 U.S.C. § 13102(16) (defining a "motor vehicle" as a "vehicle, machine, tractor, trailer, or semitrailer propelled or drawn by mechanical power and used on a highway in transportation, or a combination determined by the Secretary [of Transportation]").[5]

### 3. Plaintiffs transported product moving in interstate commerce.

Plaintiffs admit that as Bridger Transportation employees, they were "engaged in commerce" (TAC ¶ 5), and that their work as drivers "involved interstate commerce" (ECF No. 36 at 3); *see also id.* at 2 ("his work involved interstate activity"). This in turn solidifies the interstate commerce requirement for the FMCSA's jurisdiction over Plaintiffs' work. *E.g., Songer*, 618 F.3d at 474-75; *Secretary of Transportation Notice of Interpretation*, 46 Fed. Reg. 37902, 1981 WL 115508 (July 23, 1981) ("evidence of driving in interstate commerce or being subject to being used in interstate commerce should be accepted as proof that the driver is subject" to the FMCSA's jurisdiction).

---

[5] Should Plaintiffs attempt to dispute that the vehicles Plaintiffs drove weighed less than 10,001 gross vehicle weight rating, Plaintiffs nonetheless have the burden of proof on this aspect of the Motor Carrier Act Exemption. *Carley v. Crest Pumping Technologies, LLC*, 890 F.3d 575, 580 (5th Cir. 2018).

In an analogous case, *Bule v. Garda CL Southeast, Inc.*, similar factual allegations were held sufficient to grant a Rule 12(c) motion on the Motor Carrier Act Exemption. 2014 WL 3667815 (S.D. Fla. Jul. 14, 2014). The alleged facts supporting work in interstate commerce included:

- Garda sold and marketed goods and services to customers throughout the United States;
- Garda regularly engaged in interstate commerce; and
- plaintiff's work for Garda affected interstate commerce.

*Id.* at *2. The court held that "[t]hese allegations establish that Plaintiff and Defendant were both engaged in interstate commerce, fulfilling the [interstate commerce] prong of the Motor Carrier Act Exemption to the Fair Labor Standards Act." *Id.* (citing *Aira v. Best National Vending*, 2012 WL 4935086, *9 (S.D. Fla. October 16, 2012)). Plaintiffs make these same judicial admissions here. TAC ¶¶ 5 ("Plaintiffs were employees engaged in commerce"), 6 ("Defendant was, and remains, in the business of assisting companies in shipping oil all over the United States"), 7 ("it cannot be reasonably disputed that each Plaintiff was engaged in commerce").

Further solidifying the FMCSA's jurisdiction over the Plaintiffs' work are admissions that Bridger Transportation has interstate operating authority, markets itself as an interstate motor carrier transporting product nationwide, actively solicits interstate business, and transports interstate shipments. TAC ¶ 6 ("Defendant was, and remains, in the business of assisting companies in shipping oil all over the United States"); ECF No. 15 at 2 ("Bridger Transportation, LLC, provided interstate motor transportation of crude oil, refinery byproducts, condensates, and natural gasoline" and serviced "customers throughout Texas, New Mexico, Oklahoma, Colorado, and

Wyoming. It was registered as an interstate motor carrier of property with the Federal Motor Carrier Safety Administration"); *Exhibit 1*.

So it goes with Plaintiffs' allegations that "Defendant dispatched drivers" and that they "could not choose to decline a project or work assigned to them." TAC ¶¶ 11, 12. These forced dispatch allegations—a term used in the motor carrier industry to indicate drivers cannot turn down load assignments—likewise militate in favor of finding that a reasonable expectation of Plaintiffs transporting product in interstate commerce existed. *Resch v. Krapf's Coaches, Inc.*, 785 F.3d 869, 874 (3d Cir. 2015) (finding that "retaining discretion to assign drivers to drive either interstate or intrastate routes—at any time" was indicative of the reasonable expectation that one would drive in interstate commerce).

Plaintiffs' pleadings and admissions establish conclusively that there was a reasonable expectation that they would transport product in interstate commerce. The result is an admission that, on an independent basis, Plaintiffs were not entitled to overtime pay.

## IV. CONCLUSION

The Motor Carrier Act Exemption's application turns on a question of jurisdiction. Here, the FMCSA maintained jurisdiction over the Plaintiffs as their pleading admissions demonstrate they are among the class of drivers Bridger Transportation could call on, or were subject to being called on, to transport product in interstate commerce. The Motor Carrier Act Exemption therefore forecloses Plaintiffs from recovering overtime under the Fair Labor Standards Act. Consistent with the FMCSA's own views on its jurisdictional reach and binding Court precedent

9

from the Fifth Circuit and elsewhere, this Court should dismiss Plaintiffs' Third Amended Complaint with prejudice.

Dated: May 14, 2021

Respectfully submitted,

*/s/ Emily A. Quillen*
Emily A. Quillen
Texas Bar No. 24045624
S.D. Tex. ID 2050949
SCOPELITIS GARVIN LIGHT HANSON & FEARY, P.C.
777 Main Street, Suite 3450
Fort Worth, TX  76102
Tel: (817) 869-1700
Fax: (817) 878-9472
equillen@scopelitis.com

Andrew J. Butcher
Admitted Pro Hac Vice
Illinois Bar No. 6325396
SCOPELITIS GARVIN LIGHT HANSON & FEARY, P.C.
30 W. Monroe Street, Suite 1600
Chicago, IL  60603
Tel: (312) 255-7200
Fax: (312) 422-1224
abutcher@scopelitis.com

Attorneys for Defendant,
Bridger Transportation, LLC

## CERTIFICATE OF SERVICE

I hereby certify that on May 14, 2021, I electronically filed the foregoing document with the clerk of the Court for the Southern District of Texas, using the electronic case filing system of the Court and serving notice on all counsel of record by electronic means.

*/s/ Emily A. Quillen*
Emily A. Quillen

4834-7929-5719, v. 7